UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HYUNDAI MERCHANT MARINE CO., LTD., <br><br> Plaintiff, <br><br> v. <br><br> STOCKTON PORT DISTRICT, dba PORT OF STOCKTON, <br><br> Defendant. | No. 2:12-CV-01874-TLN-CKD <br><br> **ORDER** |

This matter is before the Court pursuant to Defendant Stockton Port District's ("Defendant") Motion for Summary Judgment or in the Alternative for Partial Summary Judgment. (ECF No. 25.) Plaintiff Hyundai Merchant Marine Company, Ltd. ("Plaintiff") opposes Defendant's motion. (Pl.'s Opp. to Def.'s Mot. for SJ, ECF No. 28.) Defendant has filed a reply brief in support of its motion for summary judgment. (ECF No. 31.) In response, Plaintiff filed an opposition to the reply brief, requesting permission to file a surreply. (ECF No. 31.)[1] For the reasons stated below, Defendant's Motion for Summary Judgment (ECF No. 25) is

---

[1] The Court has considered Plaintiff's motion to file a surreply, as well as Defendant's opposition to Plaintiff's motion (ECF No. 32) and finds that the scope of Defendant's reply did not exceed Plaintiff's opposition. Thus, a surreply is not necessary. *See Springs Indus., Inc. v. Am. Motorists Ins. Co*., 137 F.R.D. 238, 240 (N.D. Tex. 1991) (holding that the court retains the discretion to decline to consider additional materials presented by the parties). However, in an effort to be fully informed of the parties' positions, the Court considered the information presented in Plaintiff's surreply in reaching its decision. In addition, Defendant objects to deposition testimony supplied in support of Plaintiff's opposition on the grounds that Plaintiff failed to authenticate the deposition

1

hereby GRANTED.

**I.    Factual Background[2]**

Plaintiff was a time charterer for the vessel M/V TATJANA.  In November 2011, Transmarine Navigation Corp. ("Transmarine") was Plaintiff's vessel agent in Stockton.  In November 2011, David Ellsworth was employed as Transmarine's assistant operations manager for Northern California in Stockton, and was responsible for arranging the M/V TATJANA's arrival at the Port of Stockton.  On behalf of Plaintiff, David Ellsworth submitted a Vessel Berth Application to the Port for the arrival of the M/V TATJANA on or about November 23, 2011.  During this time, Chris Mountjoy, the Operations Manager for the Port, presented Mr. Ellsworth with three documents reflecting the depth of the water at Berth 10/11: (1) soundings; (2) a tide chart; and (3) a register of vessels.  (Losch Decl. Ex. E Ellsworth Depo., ECF No. 25-3 at 89:20-90:6.)[3]  The vessel arrived at the Port of Stockton on November 28, 2011, and was secured alongside berth 10/11 at high tide.  When the tide went down, the vessel touched bottom.  The TATJANA subsequently left the Port of Stockton to discharge its cargo at the Port of San Francisco instead.  As a result of the vessel touching bottom, Plaintiff did not suffer any physical damage to its property or any property in which it had a proprietary interest.

The parties both agree that there are two written agreements affecting this suit: (1) the Vessel Birth Application, and (2) the Port's Tariff ("Tariff").  Neither the Vessel Berth Application nor the Tariff contains any provisions mentioning the depth of any berth at the Port of Stockton.  The Tariff provides:

Item No. 7:

> Users agree that facilities, premises, including any improvements existing thereon covered by a signed letter of agreement are suitable for users intended uses, and that no officer or employee of Port of

---

testimony because there is no certification of the court reporter who reported the testimony. (ECF No. 29-1.) The Court agrees with Defendant's contention that Plaintiff's deposition testimony should have been certified in accordance with Federal Rule of Civil Procedure 56(e) and 30(f).  However, because the Court finds that admission of the deposition testimony has no bearing on this Court's decision, it declines to address Defendant's objections.

[2]    Unless otherwise identified, the facts presented in this section are derived from the undisputed facts included in Defendant's Statement of Undisputed Material Facts (ECF No. 25-2) and Plaintiff's Response to Separate Statement and Additional Facts (ECF No. 28-1).

[3]    Page number citations such as this one refer to the page number reflected on the Court's CM/ECF system and not to page numbers assigned by the parties.

> Stockton has made any representation or warranty with respect to the premises, including improvements existing thereon unless the nature and extent of such representation or warranty is described in writing and attached to the letter of agreement.

Item No. 34:

> Users shall at all times relieve, indemnify, protect and hold harmless Port of Stockton . . . . . from any and all judgments rendered, claims, and legal actions, including legal representation and expenses incurred in defending against legal actions, claims and liability . . . that may, in whole or in part, arise from or be caused, directly or indirectly by:
>
> . . .
>
> (2) Any operation conducted upon or any use or occupation of the premises by user, its officers, agents, employees, sub-tenants, licensees or invitees under or pursuant to the provisions of the agreement or otherwise;
>
> . . . . .
>
> (4) Any failure of user, its officers, agents or employees to comply with any of the terms or conditions of the agreement or any applicable Federal, state, regional, or municipal law, ordinance, rule or regulation; or . . .

(Tariff, ECF No. 25-2 at 6, 17–18.)

## II. Standard of Law

Summary judgment is appropriate when the moving party demonstrates no genuine issue as to any material fact exists, and therefore, the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis of its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* at 324 (internal quotations omitted). Indeed, summary judgment should be entered against a

party who does not make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Id.* at 322.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585−87 (1986); *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 288−289 (1968). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(c). The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* at 251−52.

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *First Nat'l Bank*, 391 U.S. at 288−89. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita*, 475 U.S. at 587 (quoting Rule 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with any applicable affidavits. Fed. R. Civ. P. 56(c); *SEC v. Seaboard Corp.*, 677 F.2d 1301, 1305−06 (9th Cir. 1982). The evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. *Anderson*, 477 U.S. at 255. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244−45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th

Cir. 1987). Finally, to demonstrate a genuine issue that necessitates a jury trial, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Id.* at 587 (internal quotations omitted).

### III.    Choice of Law

The Tariff includes the following choice of law provision: "[i]t is expressly understood and agreed that any argument and all questions arising thereunder [the tariff] shall be construed according to the laws of the State of California." (ECF No. 25-5 at 6.) The parties agree that pursuant to this provision, California law governs the contractual dispute. However, the parties disagree as to whether this provision in turn affects Plaintiff's tort claim. Defendant contends that this provision should be read narrowly and only applied to Plaintiff's contractual claim. Defendant asserts that federal maritime law should be applied to Plaintiff's negligence claim. In contrast, Plaintiff argues that California law should apply to both its contractual and tort claims. (ECF No. 31 at 13 (stating "[u]nder California law, a contractual choice of law clause, which provides that a specified body of law 'governs' the 'agreement,' encompasses all causes of action arising from or related to the agreement, including tortious breaches of duties emanating from the legal relationships the agreement creates").)

The Court has considered the arguments raised by both parties and finds that the Court need not decide this issue because the result would be the same under federal admiralty law and California state law. *See Am. Med. Response Nw., Inc. v. ACE Am. Ins. Co.*, 526 F. App'x 754, 755 (9th Cir. 2013) ("As to the choice of law issue, we need not decide whether the district court should have applied Oregon or Colorado law because both states recognize that an insured's negligent conduct is covered as an 'occurrence.'"); *Gianaculas v. Trans World Airlines, Inc.*, 761 F.2d 1391, 1393 (9th Cir. 1985) ("We need not decide whether the case is governed by New York or California law, because recovery is precluded by the laws of both states."); *Andersen v. Bureau of Indian Affairs*, 764 F.2d 1344, 1349 n.4 (9th Cir. 1985) ("But under either approach, we would reach the same result we reach here. Obviously, borrowing state law would bring us the same

1  result as we reach here, applying that law.  If we fashioned a rule of federal common law, we
2  would do so based on the same principles we have held are embodied in the Arizona statutes.
3  Thus, because the choice of law issue has no effect on our decision, we express no opinion
4  concerning it.").

5        The California Supreme Court has held that "state law is inapplicable to a maritime cause
6  of action if it works material prejudice to the characteristic features of the general maritime law or
7  interferes with the proper harmony and uniformity of that law in its international and interstate
8  relations." *Fahey v. Gledhill*, 33 Cal. 3d 884, 887 (1983); *see also Intagliata v. Shipowners &*
9  *Mer. etc. Co.*, 26 Cal. 2d 365, 372 (1945) (rejecting state defenses of contributory negligence and
10 assumption of risk); *Brandwein v. Butler*, 218 Cal. App. 4th 1485, 1501 (2013) ("State law may
11 supplement federal maritime law, as in the exercise of its police powers or in the additional
12 maritime tort remedy; state law may not, however, conflict with federal maritime law, as it would
13 be redefining the requirements or limits of a remedy available at admiralty.  State law conflict[s]
14 with general maritime law when it negatively impacts on admiralty's foremost goal—
15 uniformity." (internal cites and quotations omitted)).  Consequently, California law looks to
16 federal maritime law when analyzing maritime tort claims.  Here, the tort litigation involves
17 duties owed by a port and/or warfman to cargo ship attempting to dock at the port.  The conduct
18 at issue is maritime in its nature and the rights and liabilities of the parties in connection therewith
19 were matters clearly within the admiralty jurisdiction.  *See Jerome B. Grubart v. Great Lakes*
20 *Dredge & Dock Co.*, 513 U.S. 527, 532 (1995) (quoting 46 U.S.C. App. § 740) ("'[t]he admiralty
21 and maritime jurisdiction of the United States shall extend to and include all cases of damage or
22 injury, to person or property, caused by a vessel on navigable water, notwithstanding that such
23 damage or injury be done or consummated on land.'"); s*ee also* ECF No. 1 at 1 (entitled
24 "Complaint in Admiralty" and stating that "this is a case of admiralty or maritime jurisdiction").)
25 Therefore, California law supports applying federal maritime law.  Thus, because the choice of
26 law issue has no effect on this Court's decision, the Court expresses no opinion concerning it.

27     **IV.**     **Analysis**

28       Defendant's memorandum in support of its motion for summary judgment presents

1  multiple theories as to why Plaintiff's contractual and negligence claims against Defendant fail as
2  a matter of law.  The Court addresses each argument separately below.
3        A.  <u>Plaintiff's Contractual Claim</u>
4        Both parties agree that pursuant to 46 C.F.R. §525.2(a)(2) that any schedule of rates,
5  regulations and practices  "that is made available to the public by the marine terminal operator
6  shall be enforceable by an appropriate court as an implied contract between the marine terminal
7  operator and the party receiving the services rendered by the marine terminal operator, without
8  proof that such party has actual knowledge of the provisions of the applicable terminal schedule."
9  (ECF Nos 25-1 at 6–7; 28 at 11–12.)  As such, there are two written agreements affecting this
10 suit: (1) the Vessel Birth Application and (2) the Port's Tariffs.  Defendant asserts that Plaintiff's
11 contractual claim fails because the contract between the parties did not include an agreement
12 specifying a particular depth of the berth.  (ECF No. 25-1 at 6.)  In response, Plaintiff admits that
13 no such express agreement exists, but contends that Defendant is liable under California and
14 Federal Law which include the implied duty to provide a safe and adequate berth.  (ECF No. 28 at
15 10.)  Plaintiff asserts that "[n]o specific reference to berth depth in the tariff is required to imply
16 the ordinary and fundamental duty of a port to provide a safe and adequate berth."  (ECF No. 28
17 at 10.)  Because the parties agree that the neither the Tariff or Application include an express
18 provision concerning the depth of the berth, the Court must determine whether such a covenant
19 can be implied.
20       Generally, California courts have said that implied conditions and covenants are
21 disfavored.  *See Walnut Creek Pipe Distributors v. Gates Rubber Co. Sales Div.*, 228 Cal. App.
22 2d 810, 815 (1964); 1 Witkin, Summary 10th (2005) Contracts, § 795, p. 886.  "It is not enough
23 to say that without the proposed implied covenant, the contract would be improvident or unwise
24 or would operate unjustly.  Parties have the right to make such agreements. The law refuses to
25 read into contracts anything by way of implication except upon grounds of obvious necessity."
26 *Id.*  The California Supreme Court has articulated the following rules as to when a covenant may
27 be implied:
28            (1) The implication must arise from the language used or it must be

> indispensable to effectuate the intention of the parties; (2) it must appear from the language used that it was so clearly within the contemplation of the parties that they deemed it unnecessary to express it; (3) implied covenants can only be justified on the grounds of legal necessity; (4) a promise can be implied only where it can be rightfully assumed that it would have been made if attention had been called to it; (5) there can be no implied covenant where the subject is completely covered by the contract.

*Stockton Dry Goods Co. v. Girsh*, 36 Cal. 2d 677, 681 (1951).

Plaintiff contends that the due to the implied nature of the contract, "the terms must be implied from the contract of the parties and all of the circumstances of the transaction." (ECF No. 28 at 12.) As such, Plaintiff urges the Court to integrate statements made by Mr. Mountjoy to Mr. Ellsworth during their meeting on the day that the vessel sailed to Stockton, regarding the depth of Berth 10/11. (ECF No. 28 at 12.) In response, Defendant argues that Plaintiff is impermissibly asking this Court to import extrinsic or parole evidence. (ECF No. 29 at 5.) This Court agrees with Defendant.

"Under California contract law, the parol evidence analysis governing this case is divided into two initial inquiries: '(1) was the writing intended to be an integration, i.e. a complete and final expression of the parties' agreement, precluding any evidence of collateral agreements; and (2) is the agreement susceptible of the meaning contended for by the party offering the evidence?'" *Brinderson-Newberg Joint Venture v. Pac. Erectors, Inc.*, 971 F.2d 272, 276–77 (9th Cir. 1992) (quoting *Gerdlund v. Electronic Dispensers Int'l*, 190 Cal. App. 3d 263, 235 (1987)). Here, the Tariff Agreement contained the following integration clause:

> [t]his tariff and any usage agreement shall constitute the whole agreement between the Port of Stockton and the user. There are not terms, obligations or conditions other than those contained in the tariff and the letter of agreement. No modification of the agreements shall be valid and effective unless evidenced by an agreement in writing.

(Tariff Agreement, ECF No. 25-5 at 26–27.) The language employed by the Tariff indicates that the Tariff is intended to be a complete and final expression of the parties' agreement and further requires that any modifications be memorialized in writing. *See Grey v. Am. Mgmt. Servs.*, 204 Cal. App. 4th 803, 807 (2012) (holding that a provision stating "[t]his Agreement is the entire

8

1  agreement between the parties" refers the parties intended the contract to be the final and
2  exclusive embodiment of their agreement); *see also Sussex Fin. Enterprises, Inc. v. Bayerische*
3  *Hypo-Und Vereinsbank AG*, 460 F. App'x 709, 711 (9th Cir. 2011) ("In California, an integration
4  clause offers persuasive evidence that the parties intended for the writing to be such a final
5  expression") (citing *Salyer Grain & Milling Co. v. Henson*, 13 Cal. App. 3d 493, 501 (1970).[4]
6  Although the Application suffices as a written modification, both parties concede that the
7  Application does not contain any language specifying a particular depth of the berth.  Thus, the
8  Court must look to the provisions within the Tariff to ascertain whether its language is susceptible
9  to the meaning suggested by Plaintiff.
10    As referenced in the Factual Background, Item 7 of the Tariff states:

> [u]sers agree that facilities, premises, including any improvements existing thereon covered by a signed letter of agreement are suitable for users intended uses, and that no officer or employee of Port of Stockton has made any representation or warranty with respect to the premises, including improvements existing thereon unless the nature and extent of such representation or warranty is described in writing and attached to the letter of agreement.

15  (ECF No. 25-5 at 6.)  This provision places the duty of determining the suitability of the Port for
16  the User's intended use on the User.  The provision also expresses that any representations made
17  by an officer or employee of the Port is only binding in the event that such representation or
18  warranty is in writing and attached to a letter of agreement.  Plaintiff contends that this provision
19  does not apply to them because "there is no competent evidence that the [SIC] HMM's
20  [Plaintiff's] contract with the Port is covered by a 'signed letter of agreement' as that term is used
21  in the tariff."  (ECF No. 28 at 18.)  Plaintiff's argument is not well taken.  It is clear from the
22  language of Item 7 that the term "letter of agreement" refers to and describes the term
23  "improvement."  It has no applicability to whether this clause pertains to the usability of the
24  facilities and premises, which this Court finds that it does.  Accordingly, this provision is in
25  contrast with Plaintiff's assertion that conversations between Defendant's port manager and
26  Plaintiff's agent concerning water depth at berth 10/11 constitute an agreement between the

---

[4] In passing, Plaintiff asserts that a contract cannot be fully integrated where there are "blanks" to be filled in. (ECF No. 28 at 14.)  However, Plaintiff fails to even address how this assertion applies to the Tariff.

parties. Such parol evidence directly contradicts the provision of Item 7 in the Tariff and is thus inadmissible. *See Haggard v. Kimberly Quality Care, Inc.*, 39 Cal. App. 4th 508, 518 (1995) ("If the proposed parol evidence directly contradicts an express provision of the written agreement, however, it cannot reasonably be presumed that the parties intended to integrate two directly contradictory terms in the same agreement.") (internal quotations omitted); *see also Hutchins v. TNT/Reddaway Truck Line, Inc.*, 939 F. Supp. 721, 725 (N.D. Cal. 1996) ("the language of the contract is unambiguous, and there is no need to resort to parol evidence to assist the Court in interpreting it. Therefore, the Court must follow the plain meaning of the language in the contract."). In addition, to the extent that Plaintiff argues that information found on Defendant's website constitutes a contract, the Court finds that Plaintiff has failed to show why the proffered evidence suffices as a binding contract and not merely an advertisement. *See Harris v. Time, Inc.*, 191 Cal. App. 3d 449, 455 (1987) ("It is true that advertisements are not typically treated as offers, but merely as invitations to bargain.") Plaintiff also asserts that to allow Item 7 of the Tariff to exculpate Defendant from responsibility is inequitable and impermissible. (ECF No. 28 at 19.) However, Plaintiff fails to cite any precedent in support of its position. As such, Plaintiff has not met its burden. *See* Fed. R. Civ. P. 56.

Finally, as to Plaintiff's contention that Defendant is under a duty pursuant to Federal and California law to provide a safe and adequate berth, this Court agrees with Defendant's assertion that Plaintiff's claim sounds in tort and not contract. As such, the Court shall address this contention as it applies to Plaintiff's negligence claim below.

B. <u>Plaintiff's Negligence Claim</u>

Plaintiff asserts that Defendant is liable for its economic damages because Defendant "as a landowner and commercial enterprise, owed Plaintiff, as a person entering upon land controlled by the Port [Defendant] and the Port's [Defendant's] services, a duty of care to act in a reasonable manner" pursuant to California Government Code § 835. (ECF No. 1 at 4.) Defendant asserts that Plaintiff's negligence claim fails for the following reasons: (1) Item 7 in the Tariff requires Plaintiff to determine the suitability of berth 10/11; (2) Defendant's duty as defined by the relevant case law is only to inform Plaintiff of potential dangers that Plaintiff was not aware of;

1  and (3) the *Robins Dry Dock* Doctrine bars recovery for unintentional torts when the plaintiff is a
2  time charter of a vessel who has not suffered physical damage to property that it owns or in which
3  it has a proprietary interest. (ECF No. 25-1 at 11–14.) Because the Court finds that the *Robins*
4  *Dry Dock* Doctrine bars Plaintiff from recovering economic damages, the Court need not discuss
5  Defendant's other arguments.

6  The exclusionary rule set forth *Robins Dry Dock & Repair Co. v. Flint*, 275 U.S. 303
7  (1927) limits a negligent tortfeasor's liability for damages caused by a collision or allision. In
8  *Robins Dry Dock*, the Supreme Court held that a negligent tortfeasor who damages a vessel
9  cannot be held liable for economic losses suffered by the vessel's time charterer because the
10 vessel owner was unable to fulfill its contractual commitments under the charter. *Id.* Over time
11 this principle has been interpreted more broadly to mean that recovery for economic losses cannot
12 be obtained from a tortfeasor whose negligence damaged property unless the plaintiff had a
13 proprietary interest in the property. *See Nautilus Marine, Inc. v. Niemela*, 170 F.3d 1195, 1196
14 (9th Cir. 1999); *Channel Star Excursions, Inc. v. Southern Pac. Transp. Co.*, 77 F.3d 1135, 1137–
15 38 (9th Cir. 1996); *accord Barber Lines A/S v. M/V DONAU MARU*, 764 F.2d 50, 51–52 (1st Cir.
16 1985); *Getty Ref. & Mktg. Co. v. MT FADI B*, 766 F.2d 829, 831–33 (3d Cir. 1985); *Louisiana ex*
17 *rel. Guste v. M/V TESTBANK*, 752 F.2d 1019, 1021–24 (5th Cir. 1985) (en banc); *Venore Transp.*
18 *Co. v. M/V Struma*, 583 F.2d 708, 710–11 (4th Cir. 1978); *Federal Commerce & Nav. Co. v. M/V*
19 *MARATHONIAN*, 528 F.2d 907 (2d Cir. 1975).

20 Here, not only did Plaintiff as the charterer of the vessel not have a propriety interest, the
21 alleged negligence did not result in any physical damage. Accordingly, the *Robins Dry Dock*
22 Doctrine bars recovery of economic damages. *See Channel Star Excursions, Inc.*, 77 F.3d at
23 1137–38 (holding that the plaintiff's assertion that that maritime tort law provides a remedy for its
24 economic injuries "runs afoul of an established doctrine in maritime tort law that disallows
25 recovery in tort for economic damages without actual physical injury to person or property").
26 Plaintiff tries to skirt this rule by citing California tort principles as they apply to non-admiralty
27 claims. However, Plaintiff cannot escape the fact that the *Robins Dry Dock* Doctrine is a rule of
28 general maritime law and applies to maritime tort cases. *See D'aquisto v. Campbell Indus.*, 162

11

Cal. App. 3d 1208, 1214 (1984) (stating that the *Robins Dry Dock* Doctrine applies to maritime tort claims unless the facts indicate that the seaman wage exception established by the Ninth Circuit applies).  Thus, Plaintiff's negligent claim is barred.

### V.     Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment (ECF No. 25) is hereby GRANTED.

IT IS SO ORDERED.

Dated: June 5, 2014

Troy L. Nunley
United States District Judge